IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-02862-PAB

LUCIANA L. J. URBANOZO,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## ORDER

---

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Luciana L. J. Urbanozo on October 16, 2024.  Plaintiff seeks review of the final decision of defendant (the "Commissioner") denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-3.  Docket No. 1 at 1, ¶ 1.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

### I.    BACKGROUND

On July 25, 2021, plaintiff applied for disability insurance benefits under Title II of the Act.  R. at 44.[1]  Plaintiff's application was initially denied on January 31, 2022 and denied on reconsideration on April 17, 2023.  *Id.*  Plaintiff requested a hearing before an

---

[1] The record has been submitted across eight documents on the docket: Docket Nos. 8-1 to 8-8.  The page numbers, found in the bottom, right-hand corner of each page following the index, *see, e.g.*, Docket No. 8-2 at 2, run consecutively across all eight documents.  The Court will cite this page number when referring to the record.

Administrative Law Judge ("ALJ") and the hearing was held on October 4, 2023.  *See id.* On February 13, 2024, the ALJ issued a decision denying plaintiff's application.  *Id.* at 44-60.

To qualify for disability benefits, a claimant must have "disability insured status." 20 C.F.R. § 404.130(a).  To achieve this status, a claimant must be both fully insured and insured for disability.  *See* 42 U.S.C. §§ 414(a), 423(c)(1).  The ALJ found that plaintiff's alleged onset date for her disability was February 12, 2021 and that the last time she met the insured status requirements of the Act was on December 31, 2023.  R. at 46.  The ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; mild facet arthritis of the lumbar spine; benign paroxysmal positional vertigo; migraine headaches; dysautonomia; postural orthostatic tachycardia syndrome ("POTS"); post-COVID syndrome/post-viral fatigue syndrome; obesity; mild neurocognitive disorder; a depressive, bipolar, or related disorder (called either major depressive disorder or mood disorder); an anxiety disorder (variably called anxiety, generalized anxiety disorder, panic disorder, and anxiety disorder); and posttraumatic stress disorder ("PTSD").  *Id.* at 47.  The ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.  *Id.* at 48; *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. After a review of the record, the ALJ found that plaintiff had a residual functional capacity ("RFC") to perform  a reduced range of light work.  R. at 50.  Specifically, the ALJ concluded that plaintiff can "occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds," "stand and/or walk 4 hours and sit 6 hours of an 8-hour workday,"

and can have "frequent exposure to temperature extremes, vibration, or pulmonary irritants." *Id.* Based on this RFC, the ALJ found that plaintiff could have performed jobs that existed in the national economy between February 12, 2021 and December 31, 2023. *Id.* at 58.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on August 20, 2024. *Id.* at 1. Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.   STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id. at 97* (citation and quotation omitted). "The threshold for such evidentiary sufficiency is not high." *Id.* at 103. However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the

substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir.

2007) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)).

Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d

1482, 1487 (10th Cir. 1993).

## III.    THE FIVE STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful

work that exists in the national economy.  42 U.S.C. §§ 423(d)(1)–(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential

evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520;

*Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and
> (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§§ 404.1520(b)–(f)).  A finding that the claimant is disabled or not disabled at any point

in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.    DISCUSSION

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because he failed to properly evaluate the medical opinion of Max Nevarez, M.D. Docket No. 9 at 9. Plaintiff contends that, in Dr. Nevarez's opinion, plaintiff had "severe, incapacitating migraines with syncope and fatigue that left her bedridden and unable to perform any of her duties." *Id.* at 10 (citing R. at 1751-52). Plaintiff takes issue with the ALJ's evaluation of Dr. Nevarez's opinion, which states:

> The statement that the claimant is restricted from work due to incapacitating headaches that make her bedridden and unable to do any of her job duties is unpersuasive (33F/4). This statement is not well supported or consistent with the evidence as a whole. There is nothing in the record outside of subjective allegations for a brief period of time, that supports this statement. The record as a whole reflects that the claimant is very active in the household, goes to church, bakes and cooks to cope with stress, misses appointments because she is busy and not for migraines, drives, and goes on vacation (e.g., 17E/5; 12F/9, 31, 57;

5

28F/7; 31F/34).  The claimant reports that she is "a very outdoors go go go type of person" (35F/38).

R. at 57.  Plaintiff argues that "the ALJ may not discount medical providers' reliance on subjective complaints when current medical science lacks objective testing for migraine headaches."  Docket No. 9 at 11.  Plaintiff claims that the medical records refute the ALJ's finding that plaintiff's incapacitating headaches lasted for only a "brief period of time."  *Id.* at 12-13.

Specifically, plaintiff relies on her visit to the emergency department in February 2021, where she presented with "complaints of headaches and right-sided numbness." *Id.* at 12 (citing R. at 416).  At the February 11, 2021 visit, plaintiff reported that the numbness had been present for a week and a half and that her migraines had been worse than usual.  R. at 416.  That same month, plaintiff notes that she presented to Dr. Nevarez for a follow-up on her migraines.  Docket No. 9 at 12 (citing R. at 478-79).  At her visit with Dr. Nevarez, plaintiff complained of having migraines twice a week.  R. at 478-49.  Dr. Nevarez treated plaintiff for migraines over the course of several months, with plaintiff seeing Dr. Nevarez again in March 2021 and April 2021.  R. at 451, 456. Plaintiff also relies on her visit with Dr. Kevin Scott in August 2022.  Docket No. 9 at 12 (citing R. at 1114).  At her visit with Dr. Scott, plaintiff reported that her migraines occurred three to four days per week and that she experienced "milder migraine hangover type headaches on other days."  R. at 1114.  Dr. Scott noted that plaintiff's migraine headaches occurred more than 16 days per month with each lasting more than four hours.  *Id.*  Dr. Scott noted that plaintiff's migraines were "characterized by unilateral pain with nausea, vomiting, photophobia, phonophobia" and are "exacerbated by activity."  *Id.*  During an episode, Dr. Scott noted that plaintiff would have to "retire to

6

a dark and quiet room." *Id.* Dr. Scott found that plaintiff's migraine headaches were "incapacitating" and that they have not responded to "multiple classes of medications as recommended by the American Headache Society and American Academy of Neurology." *Id.* Dr. Scott assessed plaintiff with "[i]ntractable, chronic, migraine without aura." *Id.* at 1115. Dr. Scott administered Botox to plaintiff at the visit and did so again on November 3, 2022, February 7, 2023, May 18, 2023, and August 11, 2023. *Id.* at 1115, 1216, 1401, 1568, 1579.

In addition, plaintiff relies on medical records provided by Nurse Practitioner Jessica Kellett on September 19, 2023. Docket No. 9 at 13 (citing R. at 1761). NP Kellett noted that plaintiff's headaches occur several times a month, lasting several hours to several days, and plaintiff would experience prodromal symptoms, anorexia, nausea and vomiting, photophobia, and increased noise sensitivity. R. at 1761. NP Kellett opined that plaintiff was unable to work while suffering headaches and would need time off of work when a headache occurred. *Id.*

Plaintiff contends that the ALJ's determination that plaintiff could perform household tasks, cook, attend church, drive, and go on vacations merely shows plaintiff's impairment was "not all-encompassing." Docket No. 9 at 13 Plaintiff argues that the ALJ's description of plaintiff's daily activities "failed to note multiple qualifiers she placed on those activities, in addition to omitting several activities that had become more difficult thanks to her impairments." *Id.* Specifically, plaintiff notes that laundry takes her days to complete and that she can only sweep and mop in 30 minute intervals. *Id.* at 14 (citing R. at 316). Plaintiff argues that she needs daily reminders from her Alexa device to take her medications, her husband does 90 percent of the

7

cooking because plaintiff will get dizzy and unbalanced from vertigo and migraines, and that she cannot drive due to her vertigo. *Id.* (citing R. at 316, 318).

The Court finds that the ALJ properly considered Dr. Nevarez's opinion – and all the evidence that plaintiff purports supports his opinion – finding that such evidence does not demonstrate that plaintiff suffers incapacitating headaches that render her bedridden and unable to do any of her job duties. The ALJ did not discount Dr. Nevarez's opinion on the mere basis that Dr. Nevarez's relied on plaintiff's subjective allegations of debilitating headaches. Rather, the ALJ discounted Dr. Nevarez's opinion based on the evidence in the record that contradicted plaintiff's allegations and Dr. Nevarez's opinion regarding the severity of plaintiff's headaches. The ALJ found that that the record shows plaintiff misses medical appointments, not due to her headaches, but rather due to her living an active lifestyle. R. at 53. The ALJ found that plaintiff's headaches are well-managed by medication and other treatment. *Id.* Specifically, the ALJ cited plaintiff's description of chemodenervation treatment as being a "godsend." *Id.* The ALJ found that the evidence shows Aimovig, Cymbalta, and Nurtec are effective in aborting plaintiff's headaches. *Id.* The ALJ noted that plaintiff's claim of debilitating headaches is undermined by plaintiff's refusal to take a preventative medication. *Id.* Thus, this is not a case in which the ALJ erred by "discounting the opinions" of Dr. Nevarez because they were based solely on plaintiff's subjective allegations and the fact that "there was no objective study that determined the etiology of plaintiff's headaches." *See Blanton v. Astrue*, 2008 WL 4587923, at *6 (D. Kan. Oct. 15, 2008). Rather, the ALJ found that the medical evidence undermined plaintiff's reports, and thus Dr. Nevarez's opinion that plaintiff suffered debilitating headaches that rendered her

8

bedridden.  To the extent plaintiff argues that her inability to remember to take her medications demonstrates the debilitating nature of her migraines, the ALJ found that the "statement that the claimant needs to use compensatory strategies for memory loss is unpersuasive" and that such statement is "not well supported or fully consistent with the evidence as a whole."  R. at 56.  The ALJ noted that this statement was "based on a one-time examination, and the examiner relied on unsupported subjective allegations and testing that the examiner acknowledges is a limited representation of the claimant's function due to multiple variables."  *Id.*  For plaintiff's assertion that she cannot drive or cook due to her vertigo, she relies on the Function Report she submitted to the Social Security Administration on December 24, 2022.  *See* R. at 314-322.  As the ALJ noted, however, plaintiff merely had temporary restrictions on driving and cooking that were rescinded in May and September 2023, and that "the record reflects that the claimant is regularly driving and cooking."  R. at 56.

Accordingly, the Court finds that the ALJ's determination that plaintiff had an RFC of performing a reduced range of light work is supported by substantial evidence that plaintiff was not suffering debilitating headaches that rendered her unable to perform any job duties.  The ALJ concluded Dr. Nevarez's opinion is not well supported or constituent with the evidence as a whole, with the record instead demonstrating that plaintiff is active in and out of the house.  *Id.* at 57.  The Court declines to reweigh plaintiff's evidence regarding her migraines to conclude that the ALJ's RFC determination is not supported by substantial evidence.  *See Flaherty*, 515 F.3d at 1070.

9

V.     **CONCLUSION**

Therefore, it is

**ORDERED** that the decision of the Commissioner that claimant is not disabled is

**AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED March 30, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

10